IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br>  Plaintiff, <br><br> v. <br><br> WOODBOLT DISTRIBUTION, LLC, also known as Cellucor, <br><br>  Defendant. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Natural Alternatives International, Inc. ("NAI"), for its complaint against defendant, Woodbolt Distribution, LLC, also known as Cellucor ("Woodbolt"), alleges as follows:

## PARTIES

1. NAI is a Delaware corporation with its principal place of business in San Marcos, California.

2. Woodbolt is a Texas limited liability corporation with its principal place of business located at 715 N. Main St., Bryan, Texas, 77802. Its products and services are offered to and may be purchased and/or used by citizens of Texas. Woodbolt owns, maintains and/or operates a website at www.cellucor.com, the content of which is incorporated herein by reference.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising from Title 35 of the United States Code, 35 U.S.C. §§ 1 *et seq*.

4.      Exclusive jurisdiction over this matter is conferred upon the Court pursuant to 28 U.S.C. §§ 1331, 1338.

5.      The exercise of personal jurisdiction over the defendant comports with the laws of this State and the constitutional requirements of due process because the defendant is located in, and transacts and offers to transact business within this State.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391, 1400(b).

## FACTS

**NAI**

7.      NAI is a leading formulator, manufacturer and marketer of nutritional supplements and provides strategic partnering services to its customers.  NAI is a publicly traded company.

8.      NAI's comprehensive partnership approach offers a wide range of innovative nutritional products and services to their clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance.

9.      NAI scientifically designs and customizes nutritional products based on the unique needs of individual clients.  New products and formulas are researched and tested prior to full-scale production.  NAI routinely produces pilot or sample runs of product formulation prototypes to ensure stability and/or efficacy and to determine ingredient interaction and prospective customer acceptance of the final product.  NAI also funds, sponsors, directs and participates in clinical research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.

10. NAI certifies that each raw material used meets or exceeds the requirements of the U.S. Food and Drug Administration (FDA), the U.S. Pharmacopoeia (USP) and the Therapeutic Goods Administration of Australia (TGA). Raw materials are also tested to ensure that they are free of harmful pesticides and herbicides and are compliant with state and federal requirements for heavy metal concentration. All of these tests are done by NAI to be in compliance with 21 CFR Part 111 requirements as well as to enhance the goodwill that is important in the nutritional product market.

11. NAI's marketing and product development experts are accomplished in the areas of market research, supplement design, manufacturing, packaging, distribution, international product registration and regulatory compliance. NAI provides in-house graphic design capabilities and works with clients to create label designs, brochures, videos and other promotional tools to appropriately market its products. The combination of these components is part of a cohesive strategy designed to increase mass-market consciousness, garner goodwill and enhance brand awareness among the health-conscious consumers and facilitate expansion into new markets and channels of distribution.

12. NAI's success in the formulation, development, manufacturing and marketing of specialized products is predicated on its dedication to research and development, technology, science and state-of-the-art manufacturing. The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

13. NAI is the owner by assignment of U.S. Patent No. 8,129,422 ("the '422 patent"), issued on or about March 6, 2012 and entitled "Methods and compositions for increasing the

anaerobic working capacity in tissues". A true and correct copy of the '422 patent is attached as Ex. 1 and incorporated by reference.

14. The '422 patent contains claims directed, in part, to methods of avoiding or delaying the onset of muscular fatigue through the use of beta-alanine compositions in several formulations. The newly patented methods cover humans as well as certain animals. The methods require the use of beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide and is in the form of a dietary supplement. Esters or amides of beta-alanine, which are not part of a dipeptide, polypeptide or oligopeptide, may also be employed. Additional active agents, such as carbohydrates, L-histidine, insulin and creatine, may also be present.

15. On or about March 21, 2012, NAI issued a press release announcing the issuance of the '422 patent, a true and correct copy of which is attached as Ex. 2. Articles regarding the issuance were published, including by the New York Times, Wall Street Journal, Reuters, Barrons and NutraIngredients, true and correct copies of which are attached as Exs. 3-7. NAI maintains a virtually marking website that includes the '422 patent at www.carnosyn.com.

16. NAI owns other United States patents and foreign equivalents related to beta-alanine, which are not asserted in this case. NAI also owns the entire right, title and interest to the CarnoSyn® trademark, Serial No. 78372235 and Registration No. 3146289.

17. NAI licenses its beta-alanine patents to Compound Solutions, Inc. ("CSI"). CSI is a global importer and supplier of raw ingredients to contract manufacturers, formulators and distributors in the nutritional supplement, food, beverage, cosmetic and pharmaceutical industries. CSI imports and sells beta-alanine to companies that include the beta-alanine in products for the nutritional supplement market. CSI distributes beta-alanine in the United States. NAI derives its revenue in part from royalty payments made by CSI, where the royalty payments

are directly tied to CSI sales of beta-alanine. NAI uses these royalty payments in part to support its research and development.

**Defendant**

18. Woodbolt supplies sports nutrition supplements, including supplements containing beta-alanine.

19. Woodbolt makes, has made, uses, offers for sale and sells products that contain beta-alanine, including without limitation, C4 Extreme, M5 Extreme, and N-Zero Extreme ("Accused Products"). Woodbolt's own packaging labels, marketing materials and website represent that these products contain beta-alanine. *See, e.g.*, Exs. 8-10.

20. Woodbolt provides instructions related to the use of sports nutrition supplements, including instructions related to the use and consumption of the Accused Products containing beta-alanine.

21. Woodbolt describes its Accused Products as containing beta-alanine and that:

> Beta Alanine is a naturally occurring amino acid. Beta Alanine produces higher intramuscular carnosine levels which amplifies energy levels, supports muscular endurance, and improves performance. Beta Alanine is an effective fatigue arrester — it acts as a buffer, preventing lactic acid accumulation in skeletal muscle (which occurs during exercise) allowing the body to perform better, longer.

*See, e.g.*, http://cellucor.com/product/c4-extreme; http://www.cellucor.com/product/m5-extreme; http://www.cellucor.com/product/n0-extreme (Exs. 8-10).

22. Woodbolt has indirectly infringed one or more claims of the '422 patent after it became aware of the issuance of that patent and it will continue to do so unless enjoined.

23. As alleged above, NAI publicized the issuance of the '422 patent on or about March 21, 2012, and articles regarding the issuance were published. Also, NAI-authorized products are virtually marked with the '422 patent. On information and belief, Woodbolt

monitors activity by NAI and CSI, in particular regarding beta-alanine, and Woodbolt was specifically aware of the '422 patent prior to this suit being filed.

24. Despite such knowledge, Woodbolt continued and will continue to actively and knowingly aid and abet the direct infringement of the '422 patent by its customers in their purchase and use of the Accused Products.

25. Woodbolt's Accused Products are advertised and marketed to the public and such products may be purchased in retail stores, on Woodbolt's website or by telephone, and from third-party websites such as Bodybuilding.com and GNC.com. *See, e.g.*, Exs. 11-13. Indeed, one of the Accused Products, C4, is fifteenth on Bodybuilding.com's list of top selling products. Ex. 12.

26. The identity of specific Woodbolt customers that have purchased and used the Accused Products will be ascertained through discovery of Woodbolt and third parties. Numerous customers have posted reviews of the Accused Products at Bodybuilding.com and GNC.com. *See, e.g.*, Exs. 14-15. Further, social media has identified persons who use the Accused Products and directly infringe one or more claims of the '422 patent. By way of example only:

    (a) Woodbolt has posted on its Facebook page statements by its customers that have used the Accused Products after the '422 patent issued, such as the following:

- Chris Ternes: "Recently started using C4, workouts have been awesome, the stuff rocks!" (Apr. 30, 2012) (Ex. 16);

- Dallas Colton Baker: "I love th pumps from m5" (Apr. 10, 2012) (Ex. 16);

- Ryan Tarter: "C4 = an amazing pump and energy. Loving it." (Mar 31, 2012) (Ex. 16).

- Eric John Andal [Vallejo, California]: "Good GRAVY! Today, I had my full days dossage added on to my stack (C4 being part of it). Yikes! I've never pushed that hard through a workout EVER!" (May 3, 2012) (Ex. 17).

(b) Woodbolt and its customers have posted Twitter statements by its customers that have used the Accused Products after the '422 patent issued, such as the following (Ex. 18):

- David Kelly (@David_Kelly_UPH): "yeah that all helps get a good pump before a work. Nothing is better than #c4 @cellucor" (Apr. 20, 2012);

- Eric Swihart (@EWitness): "i have to admit, i was shocked when i opened my latest tub of #c4. Come to find out, its still the sickest pre workout i've found" (Apr. 10, 2012);

- Dwayne Kilbourne (@dwaynekilbourne): "Woot... Just got my friend / client to switch to @Cellucor M5 preworkout... simple since #Cellucor quality sells itself" (Apr. 9, 2012);

27. Woodbolt knowingly induced the directly infringing acts by its customers and it had the specific intent to encourage another's infringement of the '422 patent through the use of the Accused Products. This allegation is supported by Woodbolt's own public statements and representations about the Accused Products. By way of example and not limitation, Ex. 19 compares certain claims of the '422 patent with Woodbolt's Accused Products and the public statements and instructions made by Woodbolt.

28. The Accused Products were specially designed and made for use in a way that would infringe one or more claims of the '422 patent and there is no substantial non-infringing use for such products.

29. Woodbolt is not licensed or authorized to use NAI's intellectual property (including the '422 patent) for any of the products they sell or methods they teach.

30. The documents and exhibits referred to herein are incorporated herein by reference.

## COUNT I
### (Indirect Patent Infringement)

31. The foregoing allegations of this complaint are incorporated by reference.

32. Woodbolt was aware of the '422 patent and actively induced infringement by third parties of one or more claims of the '422 patent with the specific intent to encourage another's infringement, and will continue to do so unless enjoined therefrom.

33. Woodbolt has contributed to the use, sale and/or offer for sale by others of infringing products and methods, knowing that its Accused Products have been especially made or adapted for use in an infringement of the '422 patent. The Accused Products are not suitable for a non-infringing use.

34. Woodbolt's infringement has been willful.

35. NAI has been irreparably harmed by Woodbolt's acts of infringement and a preliminary and permanent injunction should be entered against Woodbolt and all others acting in concert with it.

36. NAI has suffered damages in an amount to be determined at trial.

### REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against defendant and that the following relief be granted:

a. judgment that defendant has infringed one or more claims of the '422 patent (35 U.S.C. § 271(b)-(c));

b. judgment that defendant's infringement of claims of the '422 patent was willful;

c. preliminary and permanent injunction against continued infringement by Woodbolt and all others acting in concert with it (35 U.S.C. § 283);

d. damages for past infringement (35 U.S.C. § 284);

e. increased and trebled damages for willful infringement (35 U.S.C. § 284);

f. imposition of a constructive trust on all proceeds from the sale of accused products;

g. attorneys' fees as allowed by law, including without limitation, 35 U.S.C. § 285;

h. costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

i. such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

NAI hereby demands a jury trial on all issues so triable.

Dated:  May 3, 2012

Respectfully submitted,

/s/ Richard J. Oparil
Glenn A. Ballard, Jr.
State Bar No. 01650200
BRACEWELL & GUILIANI
South Tower Pennzoil Place
711 Louisiana, Suite 2300
Telephone:  (713) 223-2300
Facsimile:   (713) 221-1212

Richard J. Oparil
S.D. Texas Bar No. 30422
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
(202) 457-6000
(202) 457-6315 (fax)
roparil@pattonboggs.com

Attorneys for Plaintiff
Natural Alternatives International, Inc.

Of Counsel:

Kevin M. Bell
Scott Chambers, Ph.D.
Lacy Kolo, Ph.D.
PATTON BOGGS LLP
8484 Westpark Drive, Ninth Floor
McLean, Virginia 22102
(703) 744-8000

Caroline Cook Maxwell
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
(214) 758-1500

028284.0115\5234868.01